James B. TUCKER

v.

**MAMMOTH MART INC. et al.**

No. 80–11–Appeal.

Supreme Court of Rhode Island.

June 9, 1982.

Michael J. Kiselica, Providence, for plaintiff.

Joseph W. Monahan, III, Boston, Mass., Malcolm A. Najarian, Cranston, for defendants.

## OPINION

MURRAY, Justice.

On March 21, 1975, James B. Tucker (Tucker) filed a complaint in the Superior Court alleging that he was falsely arrested and deprived of his federal constitutional rights. The defendants in the action were Mammoth Mart Incorporated (the Mammoth Mart) and three officers of the Johnston police department: Ronald T. Webster (Webster), Leo E. O'Donnell (O'Donnell), and Stephen J. Riccitelli (Riccitelli). The action against the Mammoth Mart was dismissed with prejudice by stipulation. The case against the three other defendants proceeded to jury trial. After a twenty-minute deliberation, the jury returned a verdict for the defendants. The parties are now before us on Tucker's appeal from the entry of judgment in the Superior Court action.

The essential facts are as follows. On February 11, 1975, Tucker entered the Mammoth Mart in the town of Johnston and attempted to return a pair of shoes he alleged had been purchased at the store. The management of the Mammoth Mart

refused to accept the shoes because they were soiled and appeared to have been worn for an appreciable period. In addition, no sales slip accompanied the return. In response to this refusal, Tucker informed the management that he was going to advise the store's employees and customers of his opinion of the Mammoth Mart. He also declared that he was going to fill the bag he was carrying with merchandise equal in value to the price he had paid for the shoes. With his bag in hand, containing the shoes and a pair of socks, Tucker made his way to the hardware department evidently intent on carrying out the promises he had made to the management.

While in the hardware department, Tucker began stopping customers and complaining to them in a loud and boisterous manner. In response to Tucker's behavior, the store management called the police. Webster and a patrolman Connors were the first two officers to reach the store. Webster testified that he initially spoke to the store manager who informed him of the situation involving Tucker. According to Webster's testimony, he then approached Tucker and informed him that a complaint had been made concerning Tucker's behavior. Webster also asked Tucker for identification. Webster's testimony is that Tucker at that time refused to identify himself, continued to use profanity, and attempted to continue his tirade concerning the Mammoth Mart. At this point, after thirty to forty people had gathered at the site of the disturbance, Tucker was placed under arrest for being a disorderly person; he was then advised of his rights. During the arrest O'Donnell and Riccitelli arrived at the store; Webster informed them of what had occurred. Subsequently, Tucker was escorted from the store with a policeman accompanying him on either side.

After Tucker was placed in a police vehicle, he was driven to the station. Webster testified that after Tucker arrived at the station, he suddenly became very "apologetic." According to Webster's version, Tucker was never handcuffed during the entire episode, nor was he placed in a cell while at the police station. The entire incident, from the time Webster entered the Mammoth Mart to the time Tucker was released from the police station, took approximately one hour. The Mammoth Mart did not press charges against Tucker.

Tucker's version differs in certain respects from that given by the other witnesses. Tucker stated that he never used profanity during his conversations with the police and that he was pushed to the front of the store by the officers. He also claims to have been handcuffed before he was removed from the store. While at the station, Tucker alleges, he was denied the use of the men's room, was asked to take his clothes off, and was left naked for five to ten minutes. After the time had elapsed, Tucker was allowed to put on his clothes and to leave the station. According to Tucker, whenever he has a conversation concerning the incident, he becomes nervous and begins to cry.

On appeal, Tucker contends that defendants' failure to plead the legal justification for his arrest as an affirmative defense waived such defense, and therefore, the trial justice erred in not granting Tucker's motion for a directed verdict. In addition, Tucker contends that the trial justice erroneously instructed the jury with regard to the applicability of G.L.1956 (1969 Reenactment) § 12–7–1[1] and G.L.1956 (1969 Reen-

1. General Laws 1956 (1969 Reenactment) § 12–7–1 provides:

"Temporary detention of suspects.—A peace officer may detain any person abroad whom he has reason to suspect is committing, has committed or is about to commit a crime, and may demand of him his name, address, business abroad and whither he is going; and any such person who fails to identify himself and explain his actions to the satisfaction of such peace officer may be further detained and further questioned and investigated by any peace officer; provided, in no case shall the total period of such detention exceed two (2) hours, and such detention shall not be recorded as an arrest in any official record. At the end of any such detention period the person so detained shall be released unless arrested and charged with a crime."

actment) § 12–7–3.[2]

For reasons set forth below, we reject Tucker's arguments. At oral argument Tucker's counsel relied heavily upon *Ahern v. Lynch*, 99 R.I. 316, 207 A.2d 296 (1965), to support his argument that defendants were obligated specifically to plead legal justification as an affirmative defense. *Ahern* was decided under the common-law form of pleading, which demanded more specificity and particularity from a pleader than our current practice. Because our current practice has substantially altered pleading requirements, *Ahern* is of no assistance to Tucker in the present case.

■ Rule 8(c) of the Superior Court Rules of Civil Procedure requires a party to set forth in a responsive pleading the affirmative defenses he intends to raise. Justification is an affirmative defense, and the failure to plead it constitutes a waiver of the defense. *Duquette v. Godbout*, R.I., 416 A.2d 669, 670 (1980). There is no requirement that an affirmative defense be specifically labeled as such, and the defense "may be pleaded in general terms so long as it gives the [plaintiff] fair notice of the defense." (Footnote omitted.) 1 Kent, *R.I. Civ.Prac.* § 8.6 at 87 (1969).

■ After a careful review of the pleadings in the present case, we are of the opinion that under our current practice the issue of whether or not defendants had legal justification for Tucker's arrest was properly raised. Tucker's complaint alleged that he was arrested and held against his will. The defendants in their answer denied "that they [had] unlawfully arrested"

Tucker. Clearly, the answer was sufficient to alert Tucker that defendants admitted the arrest but denied its unlawfulness. Thus, defendants were alleging in general terms that they had legal justification for the arrest. Since the issue of justification was properly raised by the pleadings, the trial justice did not err in denying Tucker's motion for a directed verdict.

Tucker's other argument relates to the trial justice's jury instructions. Tucker argues that the trial justice should not have instructed the jury with respect to the provisions of §§ 12–7–1 and 12–7–3. We disagree and proceed to dispose of these contentions.

Rule 51(b) of Super.R.Civ.P. in pertinent part provides:

"Instructions to Jury; Objections. * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto * * * stating distinctly the matter to which he objects and the grounds of his objection."

■ This court will only consider alleged errors in a trial justice's instructions to a jury when the objections have been properly raised below pursuant to Rule 51(b). *See Alvernas, Inc. v. Cohen*, R.I., 420 A.2d 78, 81 (1980).

■ In the present case, after the trial justice had charged the jury, he asked if counsel for either party had an objection to his charge. Tucker's counsel duly objected to the trial justice's instructions concerning §§ 12–7–1 and 12–7–3(b). The sole ground he gave for the objection was that the statutes "have not been pleaded." Since we

**2.** General Laws 1956 (1969 Reenactment) § 12–7–3 provides:

"Arrest without warrant for misdemeanor.—A peace officer may without a warrant arrest a person for a misdemeanor, whenever:

(a) The officer has reasonable ground to believe that a misdemeanor has been or is being committed in his presence and that the person to be arrested has committed or is committing it.

(b) The person to be arrested in fact has committed or is committing a misdemeanor in the presence of the officer, and in such case it shall be immaterial that the officer did

not believe him guilty or on unreasonable ground entertained belief in his guilt.

(c) The officer has reasonable ground to believe that the person to be arrested has committed a misdemeanor and either has fled from the scene of the crime or is a nonresident of this state and cannot be arrested later.

"Provided, an arrest under paragraph (a) or paragraph (b) of this section must be made within twenty-four (24) hours after the commission of the misdemeanor, but an arrest under paragraph (c) may be made at any time."

determined earlier in the opinion that the issue of the legal justification for Tucker's arrest was properly raised by the pleadings and since that was the only ground for the objection to the jury charge raised below, there is no reason for this court to consider the jury instructions further.

The plaintiff's appeal is denied and dismissed, the judgment of the Superior Court is affirmed, and the case is remanded to the Superior Court.